Our phone case this morning is No. 231493, Govera IP v. Spotify USA. Okay, Mr. Worzen. Good morning, Your Honors. Matt Worzen for Govera. Claim 1 of the 633 patent relates and is directed to generating a pool of content that matches a brand's parameters or personality. Claim 1 achieves this result by, namely, two technical requirements that are recited in Claim 1. The first is application of three layers of different constraints. What these constraints are are mandatory minimums regarding the digital content. Not only the content that is selected by the brand, which is the representative sample or referred to in the specification as the spine, but the constraints and the mandatory minimums are also applied to the generated pool of content that is meant to match the brand's personality. The constraints, what they do is that mandatory minimum of what? Mandatory minimum of different types of content that need to be added to either the sample, the spine, or need to appear in the ribcage, the pool of matched content. The importance of the constraints and the importance of these mandatory minimums is that they, as the specification teaches, they ensure that the data sets have sufficient depth, which leads to the second main technical requirement in Claim 1, which is the artisan must calculate a degree of association between the representative sample, the spine, and the generated pool of content, the ribcage. This degree of association allows the brand or the artisan for the brand to adjust and refine the content that is meant to convey the brand's personality to consumers so that the brand can adjust and broadly convey its data to consumers and still retain the tailoring to its personality or could narrow in. And like an accordion, the degree of association allows the artisan, the brand, to conform its message in the way that it wants. Does it want a shallow representation of its personality to the market, or does it want a deep, broad conveyance of that personality? The error that Gouvera is appealing is that the district court's analysis glossed over these technical requirements. And so Claim 1 sets these requirements out as to what the artisan needs to do to achieve this result, applying the constraints, calculating the degree of association. But what the district court did and what we submit as error is the district court's analysis reasons that Claim 1 is akin to simply matching content with the use of tags. And with that framing of Claim 1 at such a high level, Claim 1 would obviously fit into this court's precedents, striking down patent claims that claim abstract ideas. What the analysis of the district court overlooks are these technical requirements which actually define matching. It's not simply matching. Claim 1 is a long list reciting all of these different technical requirements that the artisan must achieve to do the matching and to come up with this calculated degree of association, which has utility for those who use this invention, and that is this accordion-like ability to convey the brand's message in either a broad or a narrow way. An aggravating factor we believe here is that the patent examiner amended the claims, and in Claim 1 in particular, and added four technical requirements, all of which go to the two that I've highlighted to the court this morning. First of all, the patent examiner added, and it's the last element of Claim 1, added another constraint as a part of the first order of business for the artisan to do is to apply a constraint to the spine or the representative sample and ensure that there are these mandatory minimums in the sample before going through the rest of the steps of the claim. So the patent examiner in an examiner amendment added that requirement. The district court's analysis does not address that, Your Honors. We believe that that's error for not addressing a claim limitation, and we think it's aggravated because the patent examiner actually added it here. Really, the identical problem as we see it is the three elements before that were also added by the examiner, and these really go to calculating the degree of association. The patent examiner added an element which requires a weighting factor and a quantitative value to be attached to each piece of content that is going to be cycled through Claim 1. The quantitative value then is used to calculate a value or a set of values, and then that value or set of values is then used to calculate the degree of association. Guvera also takes issue with another aspect of the district court's holding. I've touched on it briefly, but let me go a little deeper into it, and that is the district court at appendix page 11 and 12 held or reasoned that Claim 1 simply generically claims matching but never describes how to do these various steps. According to the district court, for example, tagging is not discussed, but this, Your Honors, overlooks evidence in the specification column 5 lines 52 through column 6 line 23 addresses itself to teaching the artisan about tagging. Reactive tagging is claimed in Claim 7. That is specifically taught at column 6 lines 30 through 32. The quantitative or weighting factor, the district court said that that is not taught. However, this court can find that teaching at column 7 lines 40 through 61. Instructions on how to calculate the degree of association that is taught at column, starting at column 8 line 3. Finally, the district court held that Claim 8 claimed a content matching search engine. However, Claim 8 does nothing of the sort. It covers how the brand selects the data to be included in the representative's spine. Claim 9 does teach a content matching engine, which is taught in the specification column 6 lines 65 through column 7 line 8. It is not a generic search engine, as the district court's analysis would have it. I'd like to move on then to the second issue on appeal, which is what the district court did here is invalidate all 16 claims of the 633 patent. However, the second amended complaint only put in issue Claim 1. Am I misremembering? I thought the second amended complaint said at least Claim 1. That's correct, Your Honor. And then the motion to, this is the 12D6, right? Yes. The motion to dismiss was explicit that it was arguing ineligibility of all claims. And yet, in response, you didn't say, here's a bunch of differences between Claim 1 and various other claims. Is that right? Well, I think you've characterized it accurately. However, I think the, under Streck or Fox Group, as cited in Gouvera's briefs, we don't believe the district court or this court has jurisdiction over Claims 2 through 16. We only put in issue Claim 1 in the pleading. There's only a case or controversy on Claim 1. Now, to the extent, if this court were to reject that argument, this court would have to hold that the district court's analysis did find substantial similarity between all of these various claims. And I don't think you can get to that point when just returning to, for example, Claims. You argued about the patent eligibility of the other claims other than Claim 1, right? You briefed that whole issue without ever saying that this case doesn't involve the other claims. Isn't that correct? Well, I would say that's correct. However, Gouvera did not put those claims in issue, didn't file a pleading, didn't file a complaint that put those claims in issue. It may have opposed a motion for motion to dismiss and argued why these patent claims are eligible for patent. But getting back to this argument that there cannot be substantial similarity, first of all, Claims 3, 6, and 12 all require non-numerical qualitative... The substantial similarity theory comes from Boone? Boone did hold that the claims were substantially similar. And we're arguing, Your Honor, that Boone is distinguishable because, for example, Claims 3, 6, and 12 require non-numerical contextual information. The District Court never addressed that issue that's raised in those claims in particular. So, under our reasoning, there can be no substantial similarity on this record. Moreover, as already discussed, Claim 8 and Claim 9 were just completely misconstrued, misapprehended by the District Court. There is no generic search engine in Claims 8 or 9. There was a misunderstanding... Okay, but that's a different issue. That's the 101 issue. We're talking about, hypothetically, if you were to lose under the 101 issue as to all claims, whether it's appropriate on this record, because of the existence of a case or controversy, as to all claims, to enter an adverse judgment as to all claims. I would submit, Your Honor, that it really goes to the same issue. That if there's a misunderstanding of Claims 8 and 9, that's going to inhibit or not make possible a finding of substantial similarity. Because in the District Court's view of what these claims mean, there's no ability... The District Court has overlooked key limitations, and so there can't be a finding of substantial similarity. Unless there are other questions, I think I'd like to save some time for rebuttal. Okay. Thank you. Mr. Matsui? May it please the Court, Brian Matsui on behalf of Spotify. The District Court correctly concluded that the claims are ineligible under Section 101. They are directed to the abstract idea of generating matched content. That is, taking selected content, like music or films, and then finding content that is similar. And the claims recite no inventive concept either. They just use conventional technology in its ordinary way. Now, if we start with Step 1, the claims aren't directed at all to a technological solution to a technological problem. They're just directed to a mental process. These are all steps that a person could conduct in their head. They can select the type of content that they want to identify with a brand. They can then select representative content and see if it has enough threshold, like enough songs or enough films. And then they can generate matched content from that. And we know that, and it's not a generalization from the claims, because that's what the claims themselves actually say. If we look at Appendix 42, Claim 1, it says, A computer-implemented method of generating a pool of matched electronic content pieces from an available pool of electronic content pieces selected based on a selected sample. And then the specific elements of the claim are more of the same. It recites three databases that just have different types of data, brand data, consumer data, and electronic content. It has a brand selecting electronic content, like music and films. And then it has a computer processor testing that content. And then it has the computer generating matched content. That's all that these claim elements say. The mere fact that they may be more specific or long, the claim may have a lot of limitations, doesn't take an abstract idea, an ineligible idea, and make it patent-eligible. Now, we also know this because the specification itself concedes that these are mental processes. At Appendix 37, Column 2, Line 67, it says the system is preferably computer-implemented. So we know that what they're talking about here are steps that don't have to be computer-implemented. And then at Appendix 30, Columns 7, 62 to 65, it says, of course, any selection of content may be manual. Again, just indicating that these are all mental processes that can be undertaken by a human and done with a pen and paper, much like a DJ could basically say, we're going to create music for a certain type of client in a certain type of location, and we're going to figure out what that content is. Now, the dependent claims themselves are very, very similar. Claim 8, which was referenced, is just the brand client selecting the representative content. And Claim 9 is just searching every piece of electronic content. So all that is is just basically a computer making this process more efficient, which is not at all permissible under Section 101. I'll note that on the sort of whether or not all these dependent claims were before the court, again, the complaint did say at least Claim 1. The complaint said claims multiple times. In opposing the motion to dismiss, GRABA treated Claim 1 as representative on Step 1. So if you were to look at Appendix 284 to 294, it refers to all the claims collectively without calling out any limitations at all. At Step 2, at Appendix 298, it argues specific claim elements. That makes this case fundamentally different from the Fox case that they sent, where the plaintiff affirmatively withdrew claims in the face of a motion to find the patent ineligible. So there's nothing here in these dependent claims that would indicate that there is something that's not an abstract idea. And then if we turn to Step 2, there's no argument that GRABA has made with respect to there being an inventive concept. Other than resting on the presumption of validity and saying that there are engineering requirements, which realistically are just additional steps that a human could conduct on their own. The last point I'd just like to make, unless the court has any questions, is these examiner requirement limitations that GRABA points out were added by the examiner. They're just routine data processing requirements. If we look at all these where-in clauses, they just state assigning rankings or values or weighting content, or just ensuring there's a minimum number of content, which makes perfect sense. You can't have sort of a mixtape with five songs. You need to have a sufficient amount of content. And that's all that those limitations do. Unless the court has any questions, we would ask the court to adjourn. Okay. Thank you, Mr. McSally. Mr. Warzon. Thank you. I'd just like to note that the counsel referred to steps that are taught in the specifications saying they can be done manually. That relates to one specific act, which is the brand selecting the representative sample. It doesn't, it's not directed towards any of these other technical requirements, and we just, the parties disagree on what those requirements are. They are technical additions to the claim, and they cannot be overlooked in the Section 101 analysis. And so we would ask for a reversal here. Thank you. Okay. The case is submitted. Thank both counsel. That concludes our session for this morning.